# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **MARY HOLLY NORTHINGTON,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 17-2922 |
| **NANCY A. BERRYHILL,** | : | |
| *Defendant*. | : | |
| | : | |

## ORDER

**AND NOW**, this 10th day of May, 2018, upon consideration of Plaintiff's Request for Review (Doc. No. 14), Defendant Nancy Berryhill's Response (Doc. No. 16), Plaintiff's Reply (Doc. No. 17), Magistrate Judge Marilyn Heffley's Report and Recommendation (Doc. No. 18), and Plaintiff's Objections (Doc. No. 19), it is **ORDERED** as follows:

1. The Report and Recommendation (Doc. No. 18) is **APPROVED and ADOPTED**;[1]

---

[1] Ms. Northington identifies four errors in the Report and Recommendation, and, by extension, in the ALJ's conclusion. None has merit.

**First**, she argues that the ALJ unfairly discounted the evaluation and opinion of Dr. Matiz on the ground that Dr. Matiz treated Ms. Northington only once. *See* Report & Recommendation, at 9. She points out that Dr. Johnson, whose evaluation and opinion received greater weight from the ALJ, also treated Ms. Northington only once.

But Dr. Matiz's one-off treatment was not the ALJ's only reason for discounting his opinion; both the ALJ and Magistrate Judge Heffley also emphasized the "large gap" in time between Dr. Matiz's treatment of Ms. Northington and his opinion of her disabilities. *See* Report & Recommendation, at 7.

Furthermore, Dr. Matiz's one-off treatment was relevant to his opinion in a way that Dr. Johnson's was not: Ms. Northington claimed that Dr. Matiz qualified as her "treating physician" whose opinion was entitled to controlling weight. But treating physicians only receive such deference because they typically see their patients more than once and are therefore "most able to provide a detailed, longitudinal picture of [the patient's] medical impairments." 20 C.F.R. § 416.927(c)(2). Yet a doctor who sees a patient only once cannot provide such a detailed, longitudinal picture. *See* Report & Recommendation, at 8.

**Second**, Ms. Northington argues that the ALJ focused myopically on the inconsistencies between Dr. Matiz's contemporaneous treatment notes and his eventual opinion about Ms. Northington's disabilities. *See* Report & Recommendation, at 10. Instead, the ALJ should have evaluated Dr. Matiz's medical opinion for its consistency "with the record as a whole." *See* 20 C.F.R. § 416.927(c)(4).

But a doctor's firsthand notes are a piece of the overall record — and a potentially vital piece, when (as here) the notes undercut the doctor's eventual medical opinion. *See* Report & Recommendation, at 9. The discrepancy between Dr. Matiz's notes and his eventual opinion present "relevant evidence as a

2. Plaintiff's Request for Review (Doc. No. 14) is **DENIED**; and

3. **The Clerk of Court shall mark this case CLOSED** for all purposes, including statistics.

It is so **ORDERED**.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

reasonable mind might accept as adequate to support a conclusion" that Dr. Matiz's opinion should be discounted. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)).

**Third**, Ms. Northington argues that the ALJ should have dismissed the opinion of Dr. Johnson. Although Dr. Johnson's opinion was consistent with his treatment notes, *see* Report & Recommendation, at 11–12, Ms. Northington argues that it was broadly inconsistent with the rest of the record.

But Ms. Northington's characterization of Dr. Johnson's evaluation and opinion sells both short. Dr. Johnson's notes and medical opinion were consistent with Ms. Northington's daily routine of visiting her family and doing household chores. *See* Report & Recommendation, at 11–12. In sum, Dr. Johnson's opinion was "generally consistent with the contemporaneous treatment record and [Ms. Northington's] described activities of daily living." *Id.* at 11. In granting weight to Dr. Johnson's opinion, the ALJ was on firm footing.

**Fourth**, Ms. Northington argues that the ALJ erred in finding that Ms. Northington had a residual functional capacity (RFC) not completely in step with any single medical assessment. *See* Report & Recommendation, at 14–15. For support, Ms. Northington cites case law stating that "[b]ecause they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician." *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013); *see also Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

But the ALJ did not draw a medical conclusion in lieu of a doctor; she simply used medical evidence to craft an RFC. "Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). She was "not bound to accept the opinion or theory of any medical expert," but instead could "weigh the medical evidence and draw [her] own inferences." *See Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, "the presence of some record evidence from a treating doctor that is contrary to the ALJ's ultimate decision is not fatal." *Biller*, 962 F. Supp. 2d at 779 (citing *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011)).

Indeed, to the extent that the ALJ broke with the conclusions of Dr. Johnson and Dr. Vizza, she reached findings *more* favorable to Ms. Northington: "despite giving these opinions significant weight, [the ALJ] did not adopt all of [the doctors'] limitations, but in fact assessed greater limitations in certain areas." Report & Recommendation, at 13. Of course, such findings were the ALJ's to make: "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014).